UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| CHRISTOPHER WERTS ROSEMAYER,<br>Plaintiff,<br>v.<br>ANDREW SAUL,<br>Defendant. | Case No. 20-cv-06310-RMI<br><br>**ORDER**<br>Re: Dkt. Nos. 22, 26 |

Now pending before the court in this Social Security case are two motions seeking remand under sentence four of 42 U.S.C. § 405(g) – Plaintiff's Motion for Summary Judgment (dkt. 22) (seeking a remand with instructions for immediate payment of benefits), and Defendant's Motion for Remand (dkt. 26) (seeking a remand for further proceedings). Both Parties have consented to the jurisdiction of a magistrate judge (dkts. 10, 11), the Administrative Record[1] has been filed, all briefing is complete, and the case is now ripe for decision. For the reasons stated below, Plaintiff's motion is granted in part and denied in part, and Defendant's motion is granted such that the case is remanded for further proceedings.

On November 21, 2017 and February 28, 2018, Plaintiff respectively filed applications for a period of disability and disability insurance benefits ("DIB"), and for supplemental security income – alleging an onset date of June 5, 2017 as to both applications. *See* AR at 15. Following various administrative proceedings, Plaintiff's applications were denied by the written decision of an administrative law judge ("ALJ") on November 18, 2019. *Id.* at 26. Thereafter, Plaintiff's

---

[1] The Administrative Record ("*AR*"), which is independently paginated, has been filed in several parts as a number of attachments to Docket Entry #21. *See* (dkts. 21-1 through 21-12).

request for further review was denied by the Appeals Council on July 14, 2020 (*see id*. at 1), after which he sought review in this court in September of 2020. *See* Compl. (dkt. 1) at 1-3. As to his applications, the ALJ made the following findings: (1) that he meets the insured status requirements of the Social Security Act through December 31, 2023; (2) that he had not engaged in substantial gainful activity since June 5, 2017 (the alleged onset date); (3) that he suffers from two severe impairments – osteogenesis imperfecta (also known as brittle bone disease) and major depressive disorder; (4) that he does not have an impairment or combination of impairments that meet or equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; (5) that he retains the residual functional capacity ("RFC") to perform light work with certain limitations and exceptions; (6) that he has no past relevant work; (7) that, based on his RFC and the testimony of the vocational expert, Plaintiff could perform the functions of a fast foods worker, a cashier II, and a housekeeping cleaner; and, (8) that Plaintiff has not been under a disability between his alleged onset date and the date of the ALJ's decision in November of 2019. *See* AR at 17-26.

      Both Parties agree that the case must be remanded "because the ALJ offered only a cursory assessment of the medical opinions, prior administrative medical findings and Plaintiff's subjective complaints . . ." *See* Def.'s Mot. (dkt. 26) at 3; *see also* Pl.'s Mot. (dkt. 22) at 23-24 ("the ALJ failed to provide specific, clear and convincing reasons for discounting Plaintiff's symptom allegations, including the pain arising from multiple bone fractures and the psychosis associated with his mental disorders . . . [while also failing] to provide reasons for departing from the opinion of the examining psychologist Dr. Malone, and the opinions of the State agency doctors . . . [and failing] to provide [a] legally adequate rationale for discounting the opinion of Plaintiff's primary care physician, Dr. Toub."). However, while both Parties agree that the ALJ erred and that remand is necessary, Defendant submits that further proceedings are necessary (*see* Def.'s Mot. (dkt. 26) at 5-11), where Plaintiff submits that "[t]he record does not contain any outstanding questions, and if Plaintiff's testimony were credited, it would establish he was unable to sustain regular and continuing work . . . [and] should the Court credit the opinions of Drs. Toub or Malone, it would result in Plaintiff's inability to perform substantial gainful employment" necessitating a remand for immediate calculation and award of benefits. *See* Pl.'s Mot. (dkt. 22) at

2

23-24.

The decision whether to remand for further proceedings or for payment of benefits generally turns on the likely utility of further proceedings. *See Carmickle v. Comm'r, SSA*, 533 F.3d 1155, 1169 (9th Cir. 2008). A district court may "direct an award of benefits where the record has been fully developed and where further administrative proceedings would serve no useful purpose." *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)

The Court of Appeals for the Ninth Circuit has established a three-part test "for determining when evidence should be credited and an immediate award of benefits directed." *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Remand for an immediate award of benefits is appropriate when: (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and, (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *Id*. The second and third prongs of the test often merge into a single question; that is, whether the ALJ would have to award benefits if the case were remanded for further proceedings. *Id*. at 1178 n. 2; *see also Garrison v. Colvin*, 759 F.3d 995, 1023 (9th Cir. 2014).

As to mental impairments, Molly Malone, Psy.D., performed a consultative examination on June 12, 2018, and diagnosed Plaintiff with schizoaffective disorder, major depressive disorder, posttraumatic stress disorder, amphetamine use disorder, and unspecified anxiety disorder. *See* AR at 1072-77. However, among the many errors committed by the ALJ in this case, the ALJ erroneously found only the major depressive disorder to be severe at Step Two (*see id*. at 18) without any substantial explanation for why the other diagnosed conditions are non-severe (*see id*. at 18-24). On remand, the ALJ is directed to conduct a proper Step Two analysis of Plaintiff's other mental impairments. In any event, Dr. Malone opined a series of limitations in nine aspects of work-related functioning ranging from unimpaired (in the domain of Plaintiff's ability to perform simple, detailed, or even complex tasks, or to perform work activities without special or additional supervision), to moderate impairments in several areas of work-related functions, and significant impairments in several other aspects of work-related functioning. *Id*. at 1075. However,

3

neither did Dr. Malone, nor did the ALJ, develop the record as it relates to the effects of Plaintiff's substance abuse on his work-related limitations. This issue is further complicated when viewed in conjunction with Plaintiff's own statements. For example, on June 8, 2019, Plaintiff told his treating physicians that he had not used drugs since June of 2012. *See id*. at 1276. However, this statement is contradicted by the overwhelming weight of the record evidence. In June of 2017, while "intoxicated on at least methamphetamine," Plaintiff jumped out of a moving car, causing him to suffer 36 broken bones. *See id*. at 41, 443-55, 459, 678. Then, the following year, in July of 2018, Plaintiff was admitted to the emergency room due to a suspected methamphetamine overdose and was described as such: "[h]e is nonverbal, agitated, and will require chemical and physical restraints as he is thrashing, [such that he is] a danger to [him]self and others . . . [p]atient was combative towards EMS prompting soft restraints." *Id*. at 1256. Doctors concluded that Plaintiff "appears to be 'tweaking' [and] may have ingested a[n] overdose of methamphetamine." *Id*. at 1258. His doctors' conclusion about the methamphetamine overdose was confirmed by a toxicology screening. *Id*. at 1263. Several months earlier, in January of 2018, Plaintiff had foreshadowed these events by warning his doctors that if they did not give him a prescription for an amphetamine analog (methylphenidate, commonly known as Ritalin) that "he will likely use meth again when he leaves." *Id*. at 650-51. Similarly, in February of 2017, he admitted to his doctors that he would occasionally use marijuana, that he would sometimes smoke heroin, and that "[h]e has been 'self-medicating' with crystal meth to counteract depression and lethargy" which he justified by noting that "it has been helping him to motivate to exercise and be able to gain/maintain weight." *Id*. at 671, 673.

Thus, even if one were to credit-as-true, all of Plaintiff's statements (about his inability to work) as well as all of Dr. Malone's report – the record appears incomplete and it cannot be said that reviewing the record as a whole leaves the court with no serious doubts about Plaintiff's inability to work. First, the ALJ has not developed the record such as to perform any useful analysis of the effects of Plaintiff's substance abuse on the mental limitations opined by Dr.

4

Malone.[2] Of course, Dr. Malone did not render an opinion regarding the interaction between Plaintiff's substance abuse and the symptoms and limitations of his mental impairments because Plaintiff incorrectly (or falsely) reported to her (in June of 2018) that he had not abused drugs since December of 2017. *See id.* at 1073. On remand, the ALJ is directed to correspond, or otherwise communicate with Dr. Malone, regarding the effect of Plaintiff's substance abuse (as set forth herein) and her opinions as to Plaintiff's functional limitations with and without the substance abuse. Second, the record contains substantial inconsistencies as to Plaintiff's own statements about his substance abuse (stating on one occasion that he had not abused drugs since 2012, and on another occasion that he quit using drugs in 2017, while on other occasions admitting to frequent and ongoing use of various drugs well into 2018, if not beyond). These inconsistencies and holes in the record render it impossible for this court to remand for an immediate calculation and payment of benefits as suggested by Plaintiff because the record appears to be incomplete and poorly developed such that a review of the entirety of the record leaves it far from clear that Plaintiff is, in fact, disabled and unable to perform any work in the national economy – at least as it pertains to his mental impairments.

If possible, the picture of Plaintiff's disability is even less clear when it comes to his physical impairment – osteogenesis imperfectis. In the aftermath of the episode when Plaintiff jumped from a moving vehicle, his reading physician, Dr. Daniel Toub, noted on April 27, 2018, that Plaintiff "is unable to work *at this time* from complications of a motor vehicle accident from 6/5/17 that led to multiple surgeries and ongoing chronic disabling left shoulder and upper back pain." *Id.* at 598 (emphasis added). However, when Dr. Toub completed a residual functional capacity questionnaire in May of 2019, he left the vast majority of the form blank, and Dr. Toub simply entered a blanket notation stating "cannot assess" next to each and every category of work-

---

[2] *See e.g.*, *Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001) ("In performing the analysis pursuant to sections 404.1535 and 416.935, an ALJ must first conduct the five-step inquiry without separating out the impact of alcoholism or drug addiction. If the ALJ finds that the claimant is not disabled under the five-step inquiry, then the claimant is not entitled to benefits and there is no need to proceed with the analysis under 20 C.F.R. §§ 404.1535 or 416.935. If the ALJ finds that the claimant is disabled and there is 'medical evidence of [his or her] drug addiction or alcoholism,' then the ALJ should proceed under §§ 404.1535 or 416.935 to determine if the claimant 'would still [be found] disabled if [he or she] stopped using alcohol or drugs.'") (quoting citing 20 C.F.R. §§ 404.1535, 416.935).

related functional limitation, as well as noting "cannot assess" next to the portions of the form asking for opinions regarding Plaintiff's upper extremities' range of motion. *See id*. at 1134, 1136-38. However, Dr. Toub did note that Plaintiff is likely to be absent from work for more than 3 days per month (*id*. at 1138) and that he was incapable of even working low stress jobs (*id*., at 1136). Accordingly, without further record development to reconcile these gaps in Dr. Toub's functional capacity "assessment," it would be impossible for this court to accede to Plaintiff's request for a remand with instructions to calculate and pay benefits without significant guess-work and conjecture as to why Dr. Toub could not assess any functional limitations, let alone determining what exactly might constitute Plaintiff's limitations in the various areas of his physical capacity to function in various workplace settings. On remand, the court directs the ALJ to correspond, or otherwise communicate, with Dr. Toub regarding Plaintiff's functional limitations. To the extent that Plaintiff contends that his brittle bone disease precludes his ability to function in any workplace setting whatsoever (*see* Pl.'s Mot. (dkt. 22) at 16; *see also* Pl.'s Reply (dkt. 27) at 4-5), the record manifests other inconsistencies that require further record development as well. For example, in December of 2018, Plaintiff told his physicians that he "goes to the gym regularly." *Id*. at 1302. On another occasion in 2018, he reported some shoulder discomfort "after doing push-ups." *Id*. at 1162. On still another occasion in 2018, Plaintiff suffered a sprained ankle following an episode during which he crashed his bicycle while attempting to stop the moving bike using his feet, which resulted in "[a] smashed ankle between [the] road and peddle." *Id*. at 1182-83. And then there is the fact of Plaintiff's 2017 admission to his doctors that crystal meth "has been helping him to motivate to exercise and be able to gain/maintain weight." *Id*. at 671, 673. Thus, given Plaintiff's apparent ability to go to the gym regularly (in 2018), to do pushups, to engage in physical exercise with the assistance of crystal meth, and to ride his bicycle, the court cannot conclude that no further record development is necessary, or that no useful purpose would be served by further administrative proceedings, or that a review of the record as a whole leaves the court with no serious doubts that Plaintiff is in fact disabled and unable to perform in any job whatsoever in the national economy.

//

## CONCLUSION

Accordingly, for these reasons, Plaintiff's Motion for Summary Judgment (dkt. 22) is **GRANTED in part and denied in part**, and Defendant's Motion for Remand (dkt. 26) is **GRANTED**, and the case is remanded for further proceedings consistent with the instructions provided herein.

**IT IS SO ORDERED.**

Dated: February 14, 2022

ROBERT M. ILLMAN
United States Magistrate Judge